KAMALA D. HARRIS
Attorney General of California
MARK J. BRECKLER
Chief Assistant Attorney General
KATHLEEN E. FOOTE
Senior Assistant Attorney General
PAUL A. MOORE III (SBN 241157)
BRIAN D. WANG (SBN 284490)
NICOLE S. GORDON (SBN 224138)
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 703-5702
  Fax:  (415) 703-5843
  E-mail:  Nicole.Gordon@doj.ca.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **THE STATE OF CALIFORNIA,** | Case No. CV12-5874-EJD-PSG |
| Plaintiff, | **THIRD AMENDED COMPLAINT FOR VIOLATIONS OF THE SHERMAN ACT, CARTWRIGHT ACT, AND UNFAIR COMPETITION LAW FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES** |
| v. | |
| **EBAY INC.,** | |
| Defendant. | |

COMES NOW, Kamala D. Harris, Attorney General for the State of California, and alleges the following:

## INTRODUCTION

1.     Kamala D. Harris, Attorney General, State of California, brings this action in her official capacity as the chief law enforcement officer of the State of California against eBay, Inc. ("eBay") for entering into a no-solicitation and no-hiring agreement in violation of Section 1 of the Sherman Act, the Cartwright Act, and the California Unfair Competition Law.  Pursuant to the agreement, eBay and co-conspirator Intuit, Inc. ("Intuit") agreed not to recruit each other's employees and eBay agreed not to hire any Intuit employees, even those that approached eBay for

1  a job.  This agreement harmed employees by lowering the salaries and benefits they might

2  otherwise have commanded, and deprived these employees of better job opportunities at the other

3  company.

4          2.      Senior executives at eBay and Intuit entered into an evolving "handshake" agreement

5  to restrict their ability to recruit and hire employees of the other company.  The agreement, which

6  was entered into no later than 2006, prohibited either company from soliciting the other's

7  employees for job opportunities, and for over a year prevented at least eBay from hiring any

8  employees from Intuit at all.  The agreement was enforced at the highest levels of each company.

9          3.      The agreement reduced eBay's and Intuit's incentives and ability to compete for

10  employees and restricted employees' mobility.  This agreement thus harmed employees and the

11  public by lowering the salaries and benefits they otherwise would have commanded, and deprived

12  these employees of better job opportunities at the other company.

13          4.      eBay continued to enforce the agreement even though it was on notice that it was

14  potentially illegal, both from a federal consent decree in 2010 which directly addressed such no-

15  poach agreements and from California state law.  There is no reason to believe that eBay has

16  ceased or would not resume such actions.

17          5.      This agreement between eBay and Intuit is a naked restraint of trade that is *per se*

18  unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1, that eBay adopts or abandons at

19  will.  It also violates the Cartwright Act and California's Unfair Competition Law.  Under the

20  Cartwright Act and Unfair Competition Law, the Attorney General does not need to show

21  irreparable injury before obtaining injunctions.  Cal. Bus. & Prof. Code §§ 16754-54.5.  The State

22  of California seeks an order prohibiting any such agreement and other relief to prevent eBay from

23  engaging in further employment-related anticompetitive activities.

24                              **JURISDICTION AND VENUE**

25          6.      This complaint alleges violations of the Sherman Act, 15 U.S.C. § 1.  It is filed under,

26  and jurisdiction is conferred upon this Court by, Sections 4, 4C, 12, and 16 of the Clayton Act, 15

27  U.S.C. §§ 15, 15c, 22, and 26.  The Plaintiff also alleges violations of State antitrust, consumer

28  protection, and/or unfair competition and related laws, and seeks civil penalties, and/or other

                                        2

equitable relief under those State laws.  All claims under federal and state law are based upon a common nucleus of operative facts, and the entire action commenced by this Complaint constitutes a single case that would ordinarily be tried in one judicial proceeding.

7.     The Court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1337. The Court has jurisdiction over the state claims under 28 U.S.C. § 1367 under the Court's supplemental jurisdiction because those claims are so related to the federal claims that they form part of the same case or controversy.

8.     Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because eBay transacts business, committed an illegal or tortious act, and is found in this District, within the meaning and scope of 15 U.S.C. § 22, Cal. Bus. & Prof. Code § 1672 and 28 U.S.C. § 1391(b) and (c), and a substantial part of the events giving rise to the claims arose in this District.

9.     The activities of eBay, as described herein, were within the flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce of the United States.

**PLAINTIFF**

10.     Plaintiff is the Attorney General, in the name of the people of the State of California, as *parens patriae* on behalf of natural persons residing in the state and who were employed at eBay or Intuit since January 1, 2005.

11.     The Attorney General is the state's chief law officer and is charged with enforcing the state's antitrust laws, including the Cartwright Act.  Cal. Bus. & Prof. Code §§ 16700 - 16770. The Attorney General has a continuing interest in applications of the Cartwright Act because she "may bring an action on behalf of the state or of any of its political subdivisions or public agencies to recover the damages provided for by this section, or by any comparable provision of federal law," subject to certain notification provisions.  Cal. Bus. & Prof. Code § 16750(c). Moreover, under the Cartwright Act, except as provided in the act, "every trust is unlawful, against public policy and void."  Cal. Bus. & Prof. Code § 16726.

12.     The Attorney General is specifically authorized under the Unfair Competition Law, Business and Professions Code Section 17200 to bring actions in the name of the People of the State of California to obtain injunctive and other equitable relief, restitution, and civil penalties to

3

redress unfair, unlawful, and fraudulent business practices.  *See* Bus. & Prof. Code §§ 17203, 17204, 17206.

### DEFENDANT

13.     eBay is a Delaware corporation with its principal place of business in San Jose, California.

### CO-CONSPIRATORS

14.     Intuit is a Delaware corporation with its principal place of business in Mountain View, California.

15.     Various other persons and corporations not made defendants in this complaint, including senior executives at Intuit and eBay, participated as co-conspirators in the violation alleged and performed acts and made statements in furtherance of the violation alleged.

### TRADE AND COMMERCE

16.     The information technology industry in Silicon Valley and the San Francisco Bay Area is a critical part of California's overall economy. In 2012 the Bay Area's total economic product was $535 billion, and tech companies represented about 30% of the regional economy. California's gross state product last year was $1.9 trillion, which means more than 8% — 1 of every 12 dollars — of economic activity produced by the entire state was produced by technology companies in Silicon Valley.

17.     Most of eBay's employees reside in California, and California has a strong, clear, often-articulated public policy in favor of employee mobility.

18.     Skilled employees are one reason for the success of technology companies.  Firms in the same or similar industries often compete to hire and retain talented employees.  This is especially true in technology industries because particular expertise and highly specialized skills sought by one firm often can be found at another firm.  Solicitation of skilled employees at other companies is an effective method of competing for needed employees.  eBay officials understood that recruitment is very important. Beth Axelrod, eBay's Senior Vice President for Human Resources at the time the agreement with Intuit was in effect, emphasized the importance of "cold-calling" as a recruitment tool:  "The recruiting game is changing for yet another reason:

4

1   It's no longer sufficient to target your efforts to people looking for a job; you have to reach

2   people who aren't looking."

3        19.    Constant solicitation of skilled employees from other companies is also critical for the

4   continued success of  technology companies. Silicon Valley's dominance as the world leader in

5   technology results from "knowledge spillovers"— transfers of ideas and know-how from one

6   organization to another.  It is commonly understood and widely discussed in Silicon Valley that

7   knowledge spillovers facilitated by the mobility of employees and the resulting bias against

8   vertical integration turn the entire industrial district into an engine of continuous innovation,

9   thereby transcending the life cycle of any single product.

10        20.    California's long standing public policy in favor of employee mobility is an essential

11   element to that continuous innovation.

12        21.    eBay's agreement with Intuit eliminated competition for employees.  The agreement

13   harmed employees by reducing the salaries, benefits, and employment opportunities they might

14   otherwise have earned if competition had not been eliminated.  The agreement also misallocated

15   labor between eBay and Intuit — companies that drove innovation based in part on the talent of

16   their employees.  In a well-functioning labor market, employers compete to attract the most

17   valuable talent for their needs.   Competition among employers for skilled employees may

18   improve employees' salaries and benefits and facilitate employee mobility.  The no-solicitation

19   and no-hiring agreement between Intuit and eBay distorted this competitive process and likely

20   resulted in some of eBay's and Intuit's employees remaining in jobs that did not fully use their

21   unique skills.  Ms. Axelrod stated that "structural forces fueling the war for talent" have resulted

22   in power "shift[ing] from the corporation to the individual," giving "talented individuals . . . the

23   negotiating leverage to ratchet up their expectation for their careers."

24        22.    Instead of working harder to acquire this "critical and scarce" talent, eBay and Intuit

25   called a truce in the "war for talent" to protect their own interests at the expense of their

26   employees.  eBay initially sought a limited no-solicitation agreement aimed at high-level

27   executives, but ultimately agreed to  an expansive no-solicitation and no-hire agreement.  eBay

28

1   valued its relationship with Intuit and the benefits eBay gained from restricting its own

2   employees' career mobility above the welfare of its employees.

3       23.   Neither eBay nor Intuit took any steps to ensure that employees affected by the

4   agreement knew of its existence, or how it would impact them.

5       24.   eBay knew that its agreement violated state law. It was aware that California law

6   provides that "every contract by which anyone is restrained from engaging in a lawful profession,

7   trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600.  In 2008,

8   the California Supreme Court reaffirmed that prohibition, declaring that Business and Professions

9   Code §16600 "evinces a settled legislative policy in favor of open competition and employee

10  mobility."  The Court stated that §16600 ensures "that every citizen shall retain the right to pursue

11  any lawful employment and enterprise of their choice," and protects "the important legal right of

12  persons to engage in businesses and occupations of their choosing." *Edwards v. Arthur Andersen*

13  *LLP*, 44 Cal. 4th 937, 946 (Cal. 2008).

14                          **THE UNLAWFUL AGREEMENT**

15      25.   Beginning no later than 2006, and lasting at least until 2009, eBay and Intuit

16  maintained an illegal agreement that restricted their ability to actively recruit employees from

17  each other, and for some part of that time further restricted at least eBay from hiring any

18  employees from Intuit.  As alleged in more detail below, this agreement was entered into and

19  enforced at the most senior levels of these companies.

20      26.   In November 2005, eBay's Chief Operating Officer, Maynard Webb, wrote to Scott

21  Cook, Intuit's Founder and Chairman of the Executive Committee, to "get [Mr. Cook's] advice

22  on a specific hiring situation and then see if we could establish some guidelines on an ongoing

23  basis."  Mr. Webb asked Mr. Cook for "permission to proceed" with hiring an Intuit employee

24  who contacted eBay regarding a job, and then proposed a "structure" to Mr. Cook for future

25  situations, whereby eBay would "not actively recruit from Intuit."  Under Mr. Webb's proposal,

26  for Intuit candidates "below Senior Director level" who contacted eBay regarding employment,

27  eBay would be permitted to hire them and would give Intuit "notice" only after a candidate

28  accepted a job offer.  For Intuit candidates "at Senior Director level or above", eBay would not

6

make an offer unless Intuit was notified in advance.  Mr. Cook rejected this proposal insofar as it allowed hiring of any employees without prior notice to Intuit, saying that "we don't recruit from board companies, period" and "[w]e're passionate on this."  Mr. Cook committed that Intuit would not make an offer to anyone from eBay without first notifying eBay, and said "[w]e would ask the same."

27.     A month later, in December 2005, Meg Whitman, the CEO of eBay at the time, and Mr. Cook discussed the competition for two employees with an eye toward eliminating that competition altogether.  As Ms. Whitman told Ms. Axelrod, Mr. Cook was "slightly miffed by our recent hire of two Intuit executives."

28.     No later than August 2006, the initial agreement between eBay and Intuit restricting the hiring of each other's employees was put into effect.  In August 2006, when eBay considered hiring an Intuit employee for an opening at its PayPal subsidiary, Ms. Axelrod said that while she was "happy to have a word with Meg [Whitman] about it," Ms. Axelrod was "quite confident she will say hands off because Scott [Cook] insists on a no poach policy with Intuit."  When the PayPal executive asked Ms. Axelrod to confer with Ms. Whitman, Ms. Axelrod reported back that "I confirmed with Meg [Whitman] that we cannot proceed without notifying Scott Cook first."  eBay does not appear to have pursued the potential candidate beyond this point as everyone agreed "that it's to[o] awkward to call Scott [Cook] when we don't even know if the candidate has interest," demonstrating that the non-solicitation agreement had a distinct chilling effect on recruitment and hiring between the two companies.

29.     On or about April 2007, eBay's commitment grew into a no-hire agreement.  The impetus was a complaint from Mr. Cook to Ms. Whitman that he was "quite unhappy" about a potential offer that eBay was going to make to an Intuit employee who had approached eBay. Ms. Axelrod spoke with Ms. Whitman regarding Mr. Cook's concerns, and instructed David Knight, then eBay's Vice President, Internal Communications, to hold off on making the offer. Mr. Knight urged Ms. Axelrod to find a way to make the offer happen, as the decision put the applicant "in a tough position and us in a bad place with California law" and left eBay "another 6 months away from getting another candidate" for the position.  A week later, Mr. Knight wrote to

1   Ms. Axelrod and Ms. Whitman pleading with them to at least "negotiate" any shift from a "no

2   poaching" agreement to a "no hiring" agreement after this particular applicant was hired, as eBay

3   "desperately need[ed] this position filled."

4          30.    While Ms. Axelrod ultimately authorized Mr. Knight to extend an offer to this Intuit

5   employee, eBay did expand the agreement to prohibit eBay from hiring any employee from Intuit,

6   regardless of how that employee applied for the job.  A few months later, for example, an eBay

7   human resources manager alerted Ms. Axelrod to a potential "situation" and wanted to know if

8   eBay "continue[d] to be sensitive to Scott [Cook]'s request" or if there was "any flexibility on

9   hiring from Intuit."  The Intuit candidate was "getting a lot of responses from managers directly"

10  before the human resource manager's team was involved as his "education is fantastic."  Ms.

11  Axelrod confirmed, however, that even when an Intuit employee was "dying" to work for eBay

12  and had proactively reached out to eBay, hiring managers had "no flexibility" and must keep their

13  "hands off" the potential applicant.

14         31.    Two eBay staffers sought to clarify the situation with Ms. Axelrod shortly thereafter.

15  Ms. Axelrod said: "We have an explicit hands of[f] that we cannot violate with any Intuit

16  employee.  There is no flexibility on this."  The staff asked for further clarification: "This applies

17  even if the Intuit employee has reached out and specifically asked?  If so then I assume that

18  person could NEVER be hired by ebay unless they quit Intuit first." Ms. Axelrod confirmed this

19  was "correct."  Ms. Axelrod similarly explained the impact of the agreement to Ms. Whitman:  "I

20  keep getting inquiries from our folks to recruit from Intuit and I am firmly holding the line.  No

21  exceptions even if the candidate proactively contacts us."  In another email exchange, Ms.

22  Axelrod explained that she was responding to all inquiries regarding hiring from Intuit by "firmly

23  holding the line and saying absolutely not (including to myself since their comp[ensation] and

24  ben[efits] person is supposed to be excellent!)."

25         32.    Mr. Cook was a driving force behind eBay's no-hire agreement with Intuit.  In one

26  2007 e-mail, an eBay recruiter confirmed that the message to Intuit candidates should be that

27  eBay was "not allowed to hire from Intuit per Scott Cook regardless of whether the candidate

28  applies directly or if we reach out."  eBay recruiting personnel understood that "Meg [Whitman]

8

and Scott Cook entered into the agreement (handshake style, not written) that eBay would not hire from Intuit, period." Mr. Cook and Intuit, on the other hand, agreed that Intuit would not recruit from eBay. Mr. Cook explained to one applicant who had decided to work for eBay but expressed a future interest in joining Intuit, that "Intuit is precluded from recruiting you" unless eBay has decided it does not need the employee or where the employee informs his management and then proactively contacts Intuit.

33.    eBay insisted that Intuit refrain from recruiting its employees in exchange for the limitation on eBay's ability to recruit and hire Intuit employees. On August 27, 2007, Ms. Axelrod wrote Ms. Whitman to complain that while eBay was sticking to its agreement to not hire Intuit employees, "it is hard to do this when Intuit recruits our folks." Ms. Axelrod forwarded Ms. Whitman a recruiting flyer that Intuit had sent to an eBay employee. Ms. Whitman forwarded Ms. Axelrod's e-mail to Mr. Cook the same day asking him to "remind your folks not to send this stuff to eBay people." Mr. Cook responded quickly: "#@!%$#^&!!! Meg my apologies. I'll find out how this slip up occurred again...."

34.    Throughout the course of the agreement, eBay repeatedly declined opportunities to hire or even interview Intuit employees, even when eBay had open positions for "quite some time," when the potential employee "look[ed] great," or when "the only guy who was good was from [I]ntuit." eBay employees were instructed to not pursue potential hires that came from Intuit and to discard their resumes. When a candidate applied for a position and told eBay that she had left Intuit, Ms. Axelrod went so far as to write Mr. Cook to confirm that the applicant had, in fact, left the company.

35.    The companies acknowledged that throughout the agreement, they "passed" on "talented" applicants, consistent with their anticompetitive agreement. The repeated requests from lower level employees at both companies to be allowed to recruit employees from the other firm demonstrates that the agreement denied employees the opportunity to compete for better job opportunities.

36.    The agreement between eBay and Intuit remained in effect for at least some period of time after a United States Department of Justice ("USDOJ") investigation of agreements between

9

technology companies that restricted hiring practices became public.  One eBay employee asked another in June 2009 if she had been "able to connect with Beth [Axelrod] re our policies around hiring from Intuit with respect to" a former employee at eBay's PayPal division who "wishes to return" and noted press reports of the USDOJ investigation.  The employee responded back: "It's a no go....too complicated.  We should move to plan b." (Ellipses in original.)

37.    Approximately nine hundred and ninety (990) prospective eBay employees were directly affected by the agreement.

38.    California's Silicon Valley owes its unique success, in part, to the rapid dissemination of knowledge facilitated by the mobility of employees that turns the entire industrial district into an engine of continuous innovation. In addition to harming employees and the public, this agreement also harmed California's economy by depriving Silicon Valley of its usual pollinators of ideas, hurting the overall competitiveness of the region.

39.    eBay's co-conspirator, Intuit, is prevented by consent decrees from entering into such agreements in the future.  eBay, however, is not covered by those consent decrees. It is possible that eBay is party to no-hire or no-solicit agreements currently, or may enter them in the future, pursuant to its interpretation of the antitrust laws.

40.    In part because of the 2008 *Edwards* decision, eBay was on notice that no-poach or non-solicit agreements between competing employers without business justification were contrary to California law.  Moreover, any employment contract provision is unenforceable to the extent that the provision attempts to restrain a person from hiring his former colleagues after the cessation of his employment with their employer.

41.    eBay, however, did not end its anticompetitive and anti-employee activities after *Edwards* in 2008 or after *US v. Adobe* in 2009.  eBay continued to be concerned with employee poaching at least through May 2011 when it  filed a case against Google, Inc., claiming that former eBay employee and current Google Senior Vice President Stephanie Tilenius violated her agreement not to solicit any eBay or PayPal employees for a period of one year after her departure from eBay.   She had recruited another former eBay employee, Osama Bedier, to work

*Third Amended Complaint*

with her after her arrival at Google. *See* Complaint, PayPal, Inc. v. Google, Inc., No. 1-11-CV-201863 (Cal. Sup. Ct. Santa Clara Co. May 26, 2011).

42. Absent injunctive relief, eBay is likely to continue this strategy of anticompetitive, anti-employee behavior.

## VIOLATIONS ALLEGED

**I. (VIOLATION OF SECTION 1 OF THE SHERMAN ACT)**

43. The State of California hereby incorporates paragraphs 1 through 42.

44. eBay and Intuit are direct competitors for employees, including specialized computer engineers and scientists, covered by the agreements at issue here. eBay and its co-conspirators entered into a naked no-solicitation and no-hire agreement, thereby reducing their ability and incentive to compete for employees. This agreement suppressed competition between eBay and its co-conspirators, thereby limiting affected employees' ability to secure better compensation, benefits, and working conditions.

45. eBay's agreement with Intuit is *per se* unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1. No elaborate industry analysis is required to demonstrate the anticompetitive character of this agreement.

46. The no-solicitation and no-hire agreement between eBay and Intuit is also an unreasonable restraint of trade that is unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1 under an abbreviated or "quick look" rule of reason analysis. The principal tendency of the agreement between eBay and Intuit is to restrain competition as the nature of the restraint is obvious and the agreement has no legitimate pro-competitive justification. It is clear that the agreement would have an anticompetitive effect on employees and harm the competitive process.

47. For the purpose of forming and effectuating the alleged agreement, understanding, or conspiracy, eBay and its co-conspirators did those things that they combined and conspired to do, including, but not limited to the acts, practices, and course of conduct described, and the following, among others:

a. not actively recruit Intuit or eBay employees; and

b. not hire Intuit employees.

*Third Amended Complaint*

48.     The combination and conspiracy has had, among other things, the following effects:

a.     Suppressed competition between eBay, Intuit, and their co-conspirators for employees;

b.     Limited affected employees' ability to pursue and secure new employment, as well as better compensation, benefits, and working conditions;

c.     Injured, and continues to pose a risk of injury to, the general economy of the State.

49.     Natural persons employed in the high tech industry were injured, and will continue to be injured, in their business and property by lower wages and benefits, and fewer opportunities, to which they would have had access, as a direct and indirect result of the actions of eBay and its co-conspirators.   This includes the future deprivation of competition arising from the failure of eBay to discontinue its wrongful conduct until at least the USDOJ investigation, and very likely afterwards as well.

50.     Plaintiff is entitled to an injunction against eBay, preventing and restraining the violations alleged herein, as well as enjoining it from engaging in similar conduct in the future. eBay has demonstrated, through its continuous attempts to restrict employee mobility, that it remains a serious threat to the free movement of labor.

51.     As a direct and proximate result of eBay's violations of Section 1 of the Sherman Act, natural persons residing in the State of California were injured in their business and property in that they were deprived of competition between companies for employees.  As a result of eBay's violation of Section 1 of the Sherman Act, the State of California, acting in a *parens patriae* capacity, seeks treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to Section 4C of the Clayton Act.  15 U.S.C. §15c(a)(1).

**II.     (VIOLATION OF THE CARTWRIGHT ACT, BUSINESS & PROFESSIONS CODE SECTION 16720)**

52.     The State of California hereby incorporates paragraphs 1 through 51.

53.    eBay and its co-conspirators' contract, combination, trust, or conspiracy was substantially carried out and effectuated within the State of California.  This contract, combination, trust, or conspiracy injured natural persons and the general economy of the State.

54.    Beginning at least in or around January, 2006, and continuing thereafter at least up to and including June, 2009, eBay and its co-conspirators entered into and engaged in a continuing unlawful trust for the purpose of unreasonably restraining trade in violation of  Section 16720 of the California Business and Professions Code.  eBay's policy of hindering employee mobility threatens continued harm to the economy of the State.

55.    These violations of Section 16720 of the California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among eBay and Intuit, the substantial terms of which were to create and carry out restrictions on commerce in the hiring of high tech employees.

56.    For the purpose of forming and effectuating the unlawful trust, eBay conspired to:

a.  refrain from recruiting Intuit or eBay employees.

b.  refrain from hiring Intuit employees.

57.    The combination and conspiracy had, among other things, the following effects:

a.      Suppressed competition between eBay and Intuit for employees;

b.      Limited affected employees' ability to secure employment, as well as better compensation, benefits, and working conditions; and

c.      Injured, and continues to pose a risk of injury to, the general economy of the State.

58.    California seeks an inunction in order to restore competition in the high tech employee market.

59.    As a direct and proximate result of eBay's violations of Section 16720 of the California Business and Professions Code, natural persons residing in the State of California were injured in their business and property in that they were deprived of competition between companies for employees.  As a result of eBay's violation of Section 16720 of the California Business and Professions Code, the State of California, acting in a *parens patriae* capacity, seeks

13

treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and Professions Code.

60.    The State of California also brings this claim pursuant to California Business and Professions Code Sections 16750,  16754, and 16754.5 to obtain injunctive relief and the costs of suit, including reasonable attorneys' fees.

**III.    (FOR VIOLATION OF THE UNFAIR COMPETITION LAW BUSINESS & PROFESSIONS CODE SECTION 17200)**

61.    The State of California hereby incorporates paragraphs 1 through 60.

62.    Beginning at least in or around January, 2006, and continuing thereafter at least up to and including June, 2009, Defendants committed acts of unfair competition, as defined by Sections 17200, *et seq*. of the California Business and Professions Code.

63.    Under Section 17200, *et seq.*, a business practice is *unfair* within the meaning for the Unfair Competition Law if it violates established public policy. Under Section 17200, *et seq.*, a business practice is *unlawful* and becomes independently actionable under the Unfair Competition Law if the practice violates other laws. The State of California is entitled to recovery for each violation of Section 17200 of the California Business and Professions Code.

64.    The acts, omissions, misrepresentations, practices and non-disclosures of eBay, as alleged herein, constituted unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Sections 17200, *et seq*., including, but not limited to, the following:

a.    The violations of Sections 16720, *et seq*., of the California Business and Professions Code, thus constituting unlawful acts within the meaning of Section 17200 of the California Business and Professions Code;

b.    The violation of the public policy of free competition and employee mobility expressed by Section 16600 of the California Business and Professions Code, thus constituting unfair acts within the meaning of Section 17200 of the California Business and Professions Code.

65.    An injunction would ensure that such conduct has ended at eBay.  eBay's actions have harmed and risk continuing harm to the general economy of the State.

14

**PRAYER FOR RELIEF**

California requests that:

(A)   the Court adjudge and decree that the agreement between eBay and Intuit not to compete constitutes an illegal restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act;

(B)   the Court adjudge and decree that eBay 's contract, conspiracy, or combination constitutes an illegal restraint of trade in violation of the Cartwright Act, Sections 16720, *et seq.*, of the Business & Professions Code;

(C)   the Court adjudge and decree that eBay's contract, conspiracy, or combination violates the Unfair Competition Law, Sections 17200, *et seq*. of the Business & Professions Code;

(D)   that Defendant be permanently enjoined and restrained from establishing any similar agreement unreasonably restricting competition for employees enforcing or adhering to existing agreements that unreasonably restrict competition for employees except as prescribed by the Court;

(E)   that Plaintiff be awarded restitution, including disgorgement of profits obtained by Defendant as a result of its acts of unfair competition and acts of unjust enrichment and/or any acts in violation of the Cartwright Act, Sections 16720, *et seq*. of the Business & Professions Code, and the maximum civil penalties be allowed.

(E)   that Plaintiff be awarded civil penalties, pursuant to California Business and Professions Code Section 17206 in the dollar amount of two thousand five hundred dollars and zero cents, ($2,500.00) for each violation of the Unfair Competition Law as set forth in this Complaint;

(F)   that Plaintiff be awarded the deadweight loss (i.e. the general damage to the economy of the State of California) resulting from Defendant's illegal activities;

(G)   that Plaintiff be awarded such other relief as the Court may deem just and proper to redress and prevent recurrence of the alleged violations and to dissipate the anticompetitive effects of the illegal agreement entered into by eBay; and

15

1        (H)   that Plaintiff be awarded the costs of this action and reasonable attorneys' fees.

2

3

<strong>JURY TRIAL DEMAND</strong>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury for all issues so triable.

Dated: May 1, 2014                         Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California


/s/ Nicole S. Gordon
NICOLE S. GORDON
Deputy Attorney General
*Attorneys for Plaintiff*

16