UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE STATE OF CALIFORNIA,<br><br>  Plaintiff<br><br>  v.<br><br>EBAY, INC.,<br><br>  Defendant | Case No.: 5:12-CV-05874-EJD<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>**[Re: Docket No. 55]** |

Presently before the court is Plaintiff the People of the State of California's ("California") Motion for Preliminary Approval of Settlement. No. 12-CV-05874, Dkt. No. 55. Defendant eBay Inc. ("eBay") did not submit a brief and does not oppose the motion. The court held a hearing on this matter on August 29, 2014. Having reviewed California's briefing and heard the parties' arguments, the court GRANTS California's motion.

**I.  BACKGROUND**

While the following background is extensively derived from this court's September 27, 2013 order, it is based on California's Third Amended Complaint filed on May 5, 2014. See Dkt. No. 60.

Case No.: 5:12-CV-05874-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

### A. Factual Background

This case concerns an alleged handshake agreement entered into between senior executives of eBay and Intuit, Inc. ("Intuit") that restricted their ability to recruit and hire employees of the other company. Dkt. No. 60 at ¶ 2. This agreement allegedly harmed employees and the public by lowering their salaries and benefits they otherwise would have commanded, and deprived these employees of better job opportunities at the other company. Id. at ¶ 3.

In November 2005, eBay's Chief Operating Officer, Maynard Webb, wrote to Intuit's Founder and Chairman of the Executive Committee, Scott Cook, about hiring an Intuit employee who contacted eBay regarding a job. Id. at ¶ 26. Mr. Webb proposed a structure to Mr. Cook whereby eBay would "not actively recruit from Intuit," eBay would be permitted to hire Intuit candidates "below Senior Director level" who contacted eBay regarding employment and would give Intuit "notice" only after the candidate accepted a job offer, and eBay would not make an offer for Intuit candidates "at Senior Director level or above" unless Intuit was notified in advance. Id. Mr. Cook allegedly rejected this proposal because it allowed the hiring of employees without prior notice to Intuit. Id.

California alleges that in December 2005, eBay Chief Executive Officer, Meg Whitman, and Mr. Cook discussed the competition for two employees with an eye toward eliminating that competition altogether. Id. at ¶ 27. In August 2006, the initial agreement between eBay and Intuit restricting the hiring of each other's employees was put into effect when eBay was considering hiring an Intuit employee for its PayPal subsidiary. Id. at ¶ 28. When approached about this hire, eBay's Senior Vice President for Human Resources Beth Axelrod stated that she was confident Ms. Whitman would reject the hire because Mr. Cook insisted on a no-poach policy. Id. Ms. Whitman confirmed that eBay in fact could not proceed with the hire. Id. According to

2

Case No.: 5:12-CV-05874-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

California, this demonstrates that the non-solicitation agreement had a distinct chilling effect on recruitment and hiring between the two companies. Id.

In April 2007, eBay's commitment allegedly grew into a no-hire agreement. Id. at ¶ 29. During this time, Mr. Cook complained to Ms. Whitman that he was "quite unhappy" about an offer eBay planned to make to an Intuit employee who had approached eBay. Id. eBay's Vice President of Internal Communications David Knight explained that eBay desperately needed to fill the position, thus he asked that Ms. Axelrod and Ms. Whitman to at least "negotiate" any shift from a "no poaching" agreement to a "no hiring" agreement after this particular applicant was hired. Id. California alleges that while Ms. Axelrod ultimately authorized Mr. Knight to extend an offer to this Intuit employee, eBay did expand the agreement to prohibit eBay from hiring any employee from Intuit, regardless of how that employee applied for the job. Id. at ¶ 30. Ms. Axelrod instructed that even when an Intuit employee was "dying" to work for eBay and had proactively reached out to eBay, hiring managers had "no flexibility" and must keep their "hands off" the potential applicant. Id. Ms. Axelrod allegedly confirmed that a person could never be hired by eBay unless he or she quit Intuit first. Id. at ¶ 31.

California alleges that Mr. Cook was a driving force behind eBay's no-hire agreement with Intuit. Id. at ¶ 32. eBay recruiting personnel understood that there was a handshake agreement between Ms. Whitman and Mr. Cook that eBay would not hire from Intuit, and that Mr. Cook also agreed that Intuit would not recruit from eBay. Id. at ¶ 32.

California alleges that throughout the course of the agreement, beginning in 2006 until at least 2009, eBay repeatedly declined opportunities to hire or interview Intuit employees, even when eBay had open positions for "quite some time," when the potential employee "look[ed] great," or when "the only guy who was good was from [I]ntuit." Id. at ¶¶ 25, 34. eBay employees

3

Case No.: 5:12-CV-05874-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

were instructed not to pursue potential hires that came from Intuit and to discard their resumes. Id. at ¶ 34. And when a candidate applied for a position and told eBay that she had left Intuit, Ms. Axelrod would write to Mr. Cook to confirm that the applicant had left Intuit. Id.

In 2009, the Department of Justice's ("DOJ") investigation of agreements between technology companies that restricted hiring practices became public. Id. at ¶ 36. Intuit is currently prevented by consent decrees from entering into such agreements in the future. Id. at ¶ 39.

California alleges that eBay's agreement with Intuit eliminated competition for employees. Id. at ¶ 21. It harmed employees by reducing the salaries, benefits, and employment opportunities they might otherwise have earned if competition had not been eliminated. Id. California also alleges that this agreement distorted the competition among employers for skilled employees and likely resulted in some of eBay's and Intuit's employees remaining in jobs that did not fully use their unique skills. Id. The Complaint alleges that approximately 990 prospective eBay employees were directly affected by the agreement. Id. at ¶ 37. The Complaint alleges that in addition to harming employees and the public, this agreement also harmed California's economy by depriving Silicon Valley of its usual pollinators of ideas, hurting the overall competitiveness of the region. Id. at ¶ 38.

Furthermore, California alleges that eBay was on notice that no-poach or non-solicit agreements between competing employers without business justification were contrary to California law. Id. at ¶ 40. eBay allegedly did not end its anticompetitive and anti-employee activities after the 2008 decision Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937, 946 (Cal. 2008) or after the 2009 decision United States v. Adobe Systems, Inc. Id. at ¶ 41. eBay continued to be concerned with employee poaching at least through May 2011 when it filed PayPal, Inc. v.

4
Case No.: 5:12-CV-05874-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Google, Inc., No. 1-11-CV-201863 (Cal. Sup. Ct. Santa Clara Co. May 26, 2011), in which eBay claims that former eBay employee and current Google Senior Vice President Stephanie Tilenius violated her agreement not to solicit any eBay or PayPal employees for a period of one year after her departure from eBay. Id.

### B. Procedural History

On November 16, 2012, California filed the instant action against eBay, alleging that eBay entered into a no-solicitation/no-hire agreement with Intuit in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. See Dkt. No. 1. California also raised claims under the Cartwright Act, California Business and Professions Code § 16720, and the California Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 et seq. See id. at ¶¶ 39-48. A related case was filed on the same day. See U.S. Department of Justice v. eBay, Inc., No. 12-CV-05869, Dkt. No. 1. On December 11, 2012, this court issued an order relating these two cases. See No. 12-CV-05869, Dkt. No. 11; No. 12-CV-05874, Dkt. No. 4. While California points to Intuit as a co-conspirator, they have not named Intuit as a defendant in this action because it is already subject to a court order in United States v. Adobe Systems, Inc., No. 10-01629 (D.D.C. Mar. 17, 2011), which prohibits it from entering into or enforcing any agreement that improperly limits competition for employee services. See Dkt. No. 1 at ¶ 9.

On January 22, 2013, eBay filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on the grounds that both complaints fail to allege an actionable conspiracy and fail to allege harm to competition. See No. 12-CV-05869, Dkt. No. 15; No. 12-CV-05874, Dkt. No. 9. eBay brought its Motion to Dismiss California's Complaint on the additional ground that California lacks standing to assert a claim for injunctive relief under the Sherman Act and that it fails to state a claim under the Cartwright Act or the UCL. See id. On

5
Case No.: 5:12-CV-05874-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

June 4, 2013, California filed its First Amended Complaint. See Dkt. No. 29.  On September 27, 2013, this court granted eBay's Motion to Dismiss on the grounds that California failed to demonstrate standing for injunctive relief because the complaint did not sufficiently state a threatened, forward-looking, antitrust injury. See Dkt. No. 31.  This court gave California leave to amend. Id.

On October 11, 2013, California filed its Second Amended Complaint and eBay then filed another Motion to Dismiss. See Dkt. Nos. 32, 39. Before a decision was made on the Motion, on January 21, 2014, California and eBay jointly stipulated to a stay of the case. See Dkt. No. 46. On March 21, 2014, in light of the stay, the court terminated eBay's Motion to Dismiss without prejudice. See Dkt. No. 52.

On May 1, 2014, California filed the present Motion for Preliminary Approval of Settlement. See Dkt. No. 55. The motion was unopposed. A hearing was held on August 29, 2014.

### C.     The Settlement Agreement

The complete terms of the proposed settlement agreement ("Agreement") are set forth in the Agreement itself, signed by both parties. See Dkt. No. 55-4, Ex. 4. Its key provisions are as follows: (1) $3.75 million in monetary payments from eBay; (2) injunctive relief; (3) eBay's cooperation with California; and (4) release of claims. Dkt. No. 55 at 3-6.

#### 1.     $3.75 Million in Monetary Payments from eBay

The $3.75 million in monetary payments is proposed to be divided in the following way: $2.375 million will go towards restitution for employees or prospective employees at eBay and Intuit who were affected by the agreement, and $1.375 million will be paid to California for civil penalties, attorney's fees, and claims administration costs. Dkt. No. 55 at 4-5; Dkt. No. 55-4 at

6

Case No.: 5:12-CV-05874-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

3-5.

i. *Payments to Natural Persons*

The $2.375 million is proposed to be distributed among three groups of natural persons residing in or have resided in California since January 1, 2005 and who were employed by eBay or Intuit. Dkt. No. 55 at 4; Dkt. No. 55-4 at 4.  Claimant Pool One will be comprised of approximately 40 persons who were employed by Intuit and considered for but not offered a position at eBay, whom eBay has identified from documents in its possession, and who is named on a list derived by eBay from its records that eBay will provide to California. Id.  The proposed settlement provides that approximately $200,000 will be allocated to this group with a minimum recovery of $5,000 per claimant and a maximum recovery of $10,000 per claimant. Id.  Claimant Pool Two will be comprised of approximately 950 persons who were employed by Intuit and applied for but were not offered a position at eBay, are not a member of the other Claimant Pools, and who are named on a list derived by eBay from its records that eBay will provide to California. Id.  The proposed settlement provides that approximately $950,000 will be allocated to this group with a minimum recovery of $1,000 per claimant and maximum recovery of $1,500 per claimant. Id.  Claimant Pool Three will be comprised of approximately 13,000 persons employed by either eBay or Intuit, who is not a member of the other Claimant Pools, and whose employment by either eBay or Intuit during the settlement period can be reasonably confirmed. Id.  The proposed settlement provides that approximately $1.225 million will be allocated to this group with a maximum recovery of $150 per claimant; there is no minimum recovery. Id.

According to the proposed settlement, any amount remaining will be distributed by California for *cy pres* purposes to charitable organizations agreeing to use the funds for public education and/or to support research, development, and initiatives related to promoting

7
Case No.: 5:12-CV-05874-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

employment mobility in the high-tech industry. Dkt. No. 55 at 4-5; Dkt. No. 55-4 at 5. At the final approval hearing, a list of proposed *cy pres* recipients will be presented to the court for approval. Dkt. No. 55 at 5.

### ii. *Payments to California*

The proposed $1.375 million payment to California will be allocated in the following way: (1) $250,000 in civil penalties; (2) $300,000 to satisfy claims by California that alleged eBay's agreement has harmed the California economy, including deadweight loss; (3) $675,000 in attorney's fees and costs; and (4) $150,000 in reasonable costs associated with administering the settlement. Dkt. No. 55 at 5; Dkt. No. 55-4 at 3-5.

### 2. Injunctive Relief

Under the proposed settlement, eBay would be enjoined from entering into an agreement with another entity to refrain from recruiting or competing for employees of another company, except for agreements that are not prohibited by existing law. Dkt. No. 55 at 5. The injunction precludes further conspiratorial conduct and requires that existing no-direct-solicitation provisions not be enforced. Id.

### 3. eBay's Cooperation with California

Under the proposed settlement, eBay agrees to provide documents and information relevant to the litigation or settlement, including identifying individuals, such as current or former employees, who may provide relevant information necessary to implement the terms and conditions of this proposed settlement. Dkt. No. 55 at 6; Dkt. No. 55-4 at 7.

### 4. Release of Claims Against eBay

Under the proposed settlement, the State of California, the Attorney General, and any California natural person whose claims are represented in the instant action by the California

Attorney General acting in her capacity as *parens patriae* and who did not timely file an opt-out as set forth in the proposed notice and opt-out procedures, release all claims that were or could have been asserted against eBay in connection with the facts and events alleged in the Complaints filed by California in this matter.  Dkt. No. 55 at 6; Dkt. No. 55-4 at 2.

## II.     LEGAL STANDARD

Under Section 4c and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15c and 26, and the Cartwright Act, Cal. Bus. & Prof. Code § 16760, a state's attorney general can bring forth a civil action as *parens patriae* on behalf of natural persons residing in the state to secure monetary and injunctive relief.  Neither the Clayton Act nor the Cartwright Act sets forth a standard by which proposed *parens patriae* settlements are approved, thus federal courts have adopted the approval procedure and standards used for preliminary approval in class action settlements under Federal Rule of Civil Procedure Rule 23.  See States of N.Y. and Md. v. Nintendo of Am., Inc., 775 F. Supp. 676, 680 (S.D.N.Y. 1991) ("While the [Clayton Act] does not state the standard to use in approving a *parens patriae* settlement, courts have adopted the standard used in class actions.  Under this standard, the Court will approve the Settlement Agreements if they are 'fair, reasonable and accurate.'"); In re Toys R Us Antitrust Litig., 191 F.R.D. 347, 352 (E.D.N.Y. 2000) (same); New York v. Salton, Inc., 265 F. Supp. 2d 310, 313 (S.D.N.Y. 2003) (same); In re TFT-LCD (Flat Panel) Antitrust Litig., 2013 WL 1365900, at *1 (N.D. Cal. Apr. 3, 2013) (Illston, J.) (granting final approval to a combined class and *parens patriae* settlement after preliminary approvals).  The Ninth Circuit has not addressed this issue.

When considering whether to give approval to a proposed class action (and, in this case, *parens*) settlement, Federal Rule of Civil Procedure 23(e) requires a district court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable."  In re Mego Fin.

Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). In determining whether the proposed settlement meets this standard, the court does not have the ability "to delete, modify, or substitute certain provisions . . . . The settlement must stand or fall in its entirety." Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotations omitted). The approval process entails two-steps: (1) preliminary approval of the settlement; and (2) final approval of the settlement at a fairness hearing following notice to the class. See Manual for Complex Litig. § 21.632 (4th ed. 2004). A preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Additionally, "the court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid." Id. (internal quotations and citations omitted).

**III. DISCUSSION**

  **A. Preliminary Approval of California's Proposed Settlement Agreement**

  The court must examine the proposed settlement and make a preliminary finding of fairness. Fed. R. Civ. P. 23(e). A settlement may be approved only based on a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). Relevant factors for the court to consider include: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the absence of collusion between the

parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 458. The Ninth Circuit has provided the trial judge sound discretion to approve or reject a settlement proposal. Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

    1.    <u>Factors to Determine Whether the Settlement is Fair, Reasonable, and Adequate</u>

        i.    *Strength of California's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation*

California argues that in comparison to the expense and uncertainty of continued litigation, this settlement provides definite, rapid recovery for affected individuals. Dkt. No. 55 at 8. It also states that it recognizes the inherent risk in litigation given that eBay would mount a vigorous defense, and any recovery would be delayed by years. Id.

This court agrees that settlement provides a definite and rapid recovery to the affected individuals. While at this stage of litigation the strength of California's case is still uncertain, if both parties can come to an agreement, it is highly encouraged. Thus, this factor favors settlement.

        ii.    *The Amount Offered in Settlement*

California argues that the $2.375 million restitution fund will provide ample, definite recovery for affected individuals. Dkt. No. 55 at 9. It argues that in the absence of a class action, this settlement provides the only practical means for eBay employees to recover on an individual basis, especially those whose private rights of action may already be time-barred due to the four-year statute of limitations in antitrust matters pursuant to 15 U.S.C. § 15b. Id.

The $2.375 million restitution award constitutes 66 percent of the total $3.75 million settlement. This court finds this amount to be a reasonable allocation to the affected individuals.

11
Case No.: 5:12-CV-05874-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Thus, this factor favors settlement.

        iii.    *The Extent of Discovery Completed and the Stage of the Proceedings*

California argues that the parties have reached settlement relatively early in the litigation, obviating the need for a continuation of expensive and time-consuming fact and expert discovery. Dkt. No. 55 at 9. Nonetheless, the Attorney General has conducted an extensive investigation to evaluate the factual and legal strengths and weaknesses of this case. Id. California argues that it is sufficiently informed of the nature of the claims and defenses, and is thus in a good position to evaluate the settlement for its fairness, adequacy, and reasonableness. Id.

Given the extensive amount of information available about this matter through this litigation and other cases, this court is inclined to agree that California is in a good position to evaluate the strengths and weaknesses of its case. Moreover, given that this case is early in its proceedings, this factor favors settlement.

        iv.    *The Experience and Views of Counsel and Absence of Collusion Between Parties*

California argues that the proposed settlement was reached through arm's length negotiation between experienced lawyers in the Attorney General's antitrust section and counsel for eBay, who have considerable experience in antitrust, complex, and class action litigation. Dkt. No. 55 at 9. Furthermore, California argues that the court should accord additional weight given that the Attorney General, who is charged with the trust of protecting the state and its citizens, negotiated the settlement. Id. at 10. See In re Lorazepam & Clorazepate Antitrust Litig., 205 F.R.D. 369, 380 (D.D.C. 2002) ("Court may place greater weight . . . in addressing a settlement negotiated by government attorneys committed to protecting the public interest"); In re Toys R Us

Antitrust Litig., 191 F.R.D. at 351 ("the participation of the State Attorneys General furnishes extra assurance that consumers' interests are protected").

This court agrees that counsel on both sides are experienced in antitrust and class action litigation, and the fact that the Attorney General is involved is given great weight. As such, this factor supports settlement. In sum, the court finds that the settlement appears fair, non-collusive and within the range of possible final approval.

### 2. Proposed *Cy Pres* Plan

The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries. Nachshin v. AOL, LLC, 663 F.3d 1034, 1036 (9th Cir. 2011). The Ninth Circuit has provided that "[c]y pres distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." Id. Moreover, the Ninth Circuit has warned that to effectively use the *cy pres* doctrine, the distributions must be related to the purposes of the underlying lawsuit or the class of plaintiffs involved. Id. at 1039.

In the instant action, the proposed settlement provides that any amount remaining after the claims of the claimants are redeemed will be distributed by California for *cy pres* purposes to one or more charitable organizations. Dkt. No. 55 at 4; Dkt. No. 55-4 at 5. Each *cy pres* recipient must agree to use the funds for public education and/or to support research, development, and initiatives related to promoting employment mobility in the high-tech industry. Dkt. No. 55 at 10. California states that it will strive to select local non-profit organizations that work directly to advance the causes of employment mobility and employee rights, and should work mainly within the San Francisco Bay Area. Id. at 10-11.

Given that the current matter involves restrictions imposed on employee mobility and

career advancement, it is appropriate that the unclaimed funds of the monetary payments be donated to a charitable organization that supports employment mobility in the high-tech industry in the San Francisco Bay Area. Thus, this court grants preliminary approval of the *cy pres* provision, reserving comment on the proposed recipients at final approval.

### 3.  California's Attorney's Fees

Section 16750 of the California Business and Professions Code provides that the Attorney General may collect attorneys' fees awarded by the court. The Ninth Circuit has provided that "[w]here a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011). In using the latter method, courts can "award attorneys a percentage of the common fund in lieu of . . . [the] lodestar." Id. Thus, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." Id.

In its proposed settlement, California requests $675,000 in attorney's fees and costs, which is 18 percent of eBay's $3.75 million payment. Dkt. No. 55 at 11; Dkt. No. 55-4 at 5. This amount is below the 25 percent benchmark and above the statutory minimum. This court agrees that $675,000 in attorney's fees and costs is reasonable. Thus, at this stage, this court grants preliminary approval of the attorney's fees, subject to final approval. The court will carefully review all the information concerning the requested attorney's fees before granting final approval.

### B.  Notice and Opt-Out Procedures

Affected natural persons are entitled to due process, thus they must be given notice of the proposed settlements and their rights, including the right to exclude themselves and the

14
Case No.: 5:12-CV-05874-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

opportunity to be heard. 15 U.S.C. § 15c(b)-(c); Cal. Bus. & Prof. Code § 16760(b); Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985). The Ninth Circuit has stated that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

California has provided its proposed Notice. See Dkt. 55-6 Ex. 6. The Notice consists of a series of questions and answers, and provides the contact information for the lawyers representing each party. See id. California's proposed Notice and Opt-Out Procedures consists of the following: first, within 90 days of preliminary approval, direct and publication notices will be provided to potential claimants. Dkt. No. 55 at 11. Direct notice will be sent via both a postcard and an email directing them to a settlement website that includes all relevant documents and that will have the ability to file claims, request exclusion, or file objections online. Id. Claimants will also be able to send an email or mail a letter to the claims administrator to file a claim, request an exclusion, or file an objection. Id. at 11-12. Publication notice will be provided in the following way: (1) a one-time publication of a 1/6 page summary notice in the San Jose Mercury News positioned, if possible, next to articles relating to consumer electronics; (2) a supplemental notice by publication sponsored links advertising on major search engines, display advertising through the Google Display network, and a party-neutral press release issued by the Attorney General. Id. at 12. These notices will direct potential claimants to the settlement website which will also be linked from the Attorney General's website. Id. Second, potential claimants will have 180 days after preliminary approval (90 days after completion of Notice) to submit claims, request to be excluded, or object to the settlement ("Response Period"). Id. at 11. Third, within 120 days after the end of the Response Period, California or its designated settlement administrator will prepare a

15
Case No.: 5:12-CV-05874-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

report for the court that lists eligible claimants, provides information on objections and exclusions, confirms that notice has been completed, and includes a plan of distribution to each Claimant Pool as well as distribution to *cy pres* recipients if applicable. Id. at 12. Fourth, no later than 60 days after the court gives its final approval to this settlement, payment to all eligible claimants will be made. Id.

This court finds that the above-described procedures meet the standards of Rule 23 and will rely on the parties' good judgment to derive a Notice that looks genuine. Having raised issues of the Notice's appearance at oral argument, this court emphasizes the importance of ensuring that the Notice look real so that class members can pay attention to it. Thus, the form of notice attached as Exhibit C of the Gordon Declaration is hereby approved.

**IV.   CONCLUSION**

For the reasons stated herein, the Motion for Preliminary Approval of Settlement is GRANTED as follows:

1. The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).
2. The Notice Plan and the content of the forms of Notice to the Settlement Class as set forth in the Settlement Agreement and Exhibit C of the Gordon Declaration are approved.
3. A hearing on the final approval of *parens patriae* settlement shall be held before this court on June 26, 2015 at 9:00 a.m. The Attorney General shall file brief(s) requesting final approval of the Settlement Agreement and Fee Award no later than 30 calendar days

16
Case No.: 5:12-CV-05874-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

before the final approval hearing.  Any objections to the Settlement by Settlement Class Members must be filed at least 30 days before the final approval hearing.

**IT IS SO ORDERED**.

Dated: August 29, 2014



EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

17
Case No.: 5:12-CV-05874-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT