UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EBAY, INC.,<br><br>　　　　　Defendant. | Case No.  5:12-cv-05874-EJD<br><br>**ORDER GRANTING MOTION FOR FINAL APRPOVAL OF SETTLEMENT**<br><br>Re: Dkt. No. 70 |

　　　　The California Attorney General (the "State") filed this lawsuit against eBay, Inc. ("eBay") alleging antitrust violations. This action is brought on behalf of both the State of California and as *parens patriae* on behalf of natural persons. Presently before the court is the State's Motion for Final Approval of the Settlement Agreement. See Dkt. No. 70.

　　　　Federal jurisdiction arises pursuant to 28 U.S.C. §§ 1331 and 1337. Having carefully considered the parties' briefing along with oral argument, the court grants the motion for the reasons explained below.

**I.　　FACTUAL AND PROCEDURAL BACKGROUND**

　　　　This case concerns an alleged handshake agreement entered into between senior executives of eBay and Intuit, Inc. ("Intuit") that restricted their ability to recruit and hire employees of the other company. Third Am. Compl., Dkt. No. 60 at ¶ 2. The State alleges that throughout the course of the agreement, beginning in 2006 until at least 2009, eBay repeatedly declined opportunities to hire or interview Intuit employees, and eBay employees were instructed not to pursue potential hires that came from Intuit. Id. at ¶¶ 25, 34. eBay's agreement with Intuit eliminated competition for employees, and it harmed employees by reducing the salaries, benefits,

1

and employment opportunities they might otherwise have earned if competition had not been eliminated. Id. at ¶ 21. The agreement also distorted the competition among employers for skilled employees and likely resulted in some of eBay's and Intuit's employees remaining in jobs that did not fully use their unique skills. Id. Additionally, the agreement harmed California's economy by depriving Silicon Valley of its usual pollinators of ideas, hurting the overall competitiveness of the region. Id. at ¶ 38.

The State filed the instant action in November 2012, alleging that eBay agreed to enter into a no-solicitation and no-hiring agreement in violation of Section 1 of the Sherman Act, the Cartwright Act, and the California Unfair Competition Law. See Dkt. No. 1. A related case, U.S. Department of Justice v. eBay, Inc., Case No. 5:12-cv-05869-EJD, was filed on the same day, and the State and the U.S. Department of Justice coordinated the two matters.[1] Pending a motion to dismiss, the parties thereafter stipulated to the filing of the First Amended Complaint. See Dkt. Nos. 23, 29. In September 2013, the court granted eBay's motion to dismiss with leave to amend. See Dkt. No. 31. The State then filed its Second Amended Complaint, and eBay subsequently filed a motion to dismiss. See Dkt. Nos. 32, 39. In January 2014, the parties stipulated to a stay of the case, and in March 2014, the court terminated eBay's motion to dismiss in light of the stay. See Dkt. Nos. 46, 52.

The parties engaged in settlement negotiations, which were facilitated by phone conferences through the court's ADR program in December 2013 and January 2014. In May 2014, the State filed a motion for preliminary approval of the settlement. See Dkt. No. 55. As part of the settlement process, the State filed its Third Amended Complaint in May 2014—which is the operative complaint—and added *parens patriae* allegations to allow affected employees to receive direct monetary compensation. See Dkt. No. 60. Therein, the State asserts the following claims: (1) violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16720; and (3) violation of the Unfair Competition Law,

---

[1] In U.S. Department of Justice v. eBay, Inc., the court entered final judgment on September 2, 2014, and the clerk closed the file. See Case No. 5:12-cv-05869-EJD, Dkt. No. 66.

2
Case No.: 5:12-cv-05874-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT

1  Cal. Bus. & Prof. Code § 17200. See id. In August 2014, the court granted the State's motion for
2  preliminary approval of the settlement. See Dkt. No. 62.

3      The parties return seeking final approval of the settlement. The instant motion was filed in
4  May 2015, and a hearing on this motion was held on June 25, 2015. See Mot., Dkt. No. 70; Dkt.
5  No. 76. There are two objectors to the settlement, but only one objector, Mr. Youchan Lee, filed a
6  memorandum of points and authorities and appeared at the hearing. See Dkt. Nos. 69, 74.
7  Subsequent to the hearing, the State filed a supplemental brief identifying the *cy pres* recipients, as
8  requested by the court. This order follows full briefing.

## II. LEGAL STANDARD

Under Sections 4C and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15c and 26, and the Cartwright Act, Cal. Bus. & Prof. Code § 16760, a state's attorney general can bring forth a civil action as *parens patriae* on behalf of natural persons residing in the state to secure monetary and injunctive relief. Neither the Clayton Act nor the Cartwright Act sets forth a standard by which proposed *parens patriae* settlements are approved, thus federal courts have adopted the approval procedure and standards used for approval in class action settlements under Federal Rule of Civil Procedure 23. See In re TFT-LCD (Flat Panel) Antitrust Litig., No. M 07-1827-SI, 2013 WL 1365900, at *4 (N.D. Cal. Apr. 3, 2013) (granting final approval to a combined class and *parens patriae* settlement); States of N.Y. and Md. V. Nintendo of Am., Inc., 775 F. Supp. 676, 680 (S.D.N.Y. 1991) (noting that to approve a *parens patriae* settlement, courts have adopted the standard used in class actions—the settlement agreement must be fair, reasonable, and adequate).

"Approval under Rule 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Having already completed a preliminary examination of the agreement, the court reviews it again,

mindful that the law favors the compromise and settlement of class action suits. See, e.g., Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 576 (9th Cir. 2004); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." Hanlon, 150 F.3d at 1026.

### III.   DISCUSSION

#### A.   Appropriateness of the Notice Plan

Federal Rule of Civil Procedure 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." When individual notice is not practical, publication or some similar mechanism can be sufficient to provide notice to the individuals that will be bound by the class action judgment. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950).

Here, the State implemented the approved notice and claims process through the claims administrator Gilardi & Co. LLC ("Claims Administrator"). See Decl. of Kenneth Jue ("Jue Decl."), Dkt. No. 71 at ¶¶ 2-3. The Claims Administrator received information for 31,547 eBay and Intuit employees who were eligible to be part of the settlement. Id. at ¶ 9.

The Claims Administrator issued direct notice whereby a notice postcard was mailed to 31,547 mailing addresses, and an electronic version of the notice postcard was emailed to 12,263 email addresses. Id. at ¶ 10. Additionally, reminder postcards were mailed and reminder notices were emailed to individuals who had not submitted a claim, telephone calls were made by the Claims Administrator, and emails were sent by the Office of the Attorney General of California. Id. at ¶¶ 13, 15. Furthermore, a toll-free telephone number and settlement website were created, the summary notice was published in the San Jose Mercury News, an online notice campaign through search ads and display ads was created, and the Office of the Attorney General of California issued a press release that appeared on its website. Id. at ¶¶ 16-18, 20-21. The content and appearance of the class notice and related forms were approved as consistent with Rule

4
Case No.: 5:12-cv-05874-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT

23(c)(2)(B).  See Jue Decl., Exhs. A–D.

The court finds that the notice plan and class notices are consistent with Rule 23, and that the plan has been fully and properly implemented by the parties and the Class Administrator.

### B. Fairness of the Settlement

The court now reexamines the fairness of the proposed settlement agreement. See Settlement Agreement, Decl. of Nicole Gordon ("Gordon Decl."), Exh. A, Dkt. No. 55-4. The settlement agreement contains the following major components:

1. <u>Monetary Payments</u>.  eBay agreed to create a non-reversionary settlement fund of $3.75 million. Id. at § V(A).  Of this amount, $2.375 million will be allocated as restitution to three groups of natural persons who are residing in or have resided in California from January 1, 2005 through May 1, 2014, and who were employed by eBay or Intuit. Id. at § VI(A); Tr., Dkt. No. 80 at 28.  The three groups are as follows:

    i. Claimant Pool One: Individuals who were employed by Intuit, and were considered for but not offered a position at eBay. Settlement Agreement § VI(A). There are about 40 individuals in this group, and each claimant will receive a maximum amount of $10,000. Id.

    ii. Claimant Pool Two: Individuals who were employed by Intuit, applied for but were not offered a position at eBay, and are not members of Claimant Pool One. Id.  There are about 50 individuals in this group, and each claimant will receive a maximum amount of $1,500. Id.

    iii. Claimant Pool Three: Individuals who were employed by either eBay or Intuit, and are not members of either Claimant Pool One or Two. Id.  Each claimant will receive a maximum amount of $150. Id.

The remaining settlement fund will be allocated as follows:

    i. Payment of $250,000 to the State for civil penalties. Id. at § V(A)(1).

    ii. Payment of $150,000 for costs of notice and fund administration. Id. at § V(A)(2).

    iii. Payment of $300,000 for harm to the California economy, including deadweight

1        loss, resulting from the conduct alleged.  Id. at § VI(B).

2        iv.     Payment of $675,000 to the State for attorneys' fees and costs.  Id. at § VI(C).

3        v.      Any remaining amount will be distributed *cy pres* organizations for purposes

4        relating to employment in the technology industry in California.  Id. at § VI(D).

2.  Injunctive Relief.  eBay will be enjoined from entering into an agreement with another entity to refrain from recruiting or competing for employees of another company, except for agreements that are not prohibited by existing law.  Mot. at 5-6.  The injunction precludes further conspiratorial conduct and requires that eBay not enforce any existing no-direct-solicitation provisions.  Id.

3.  eBay's Cooperation.  eBay agrees to provide documents and information relevant to the litigation or settlement, including identifying individuals, such as current or former employees, who may have relevant information necessary to implement the settlement.  Settlement Agreement § IX(C).

4.  Release of Claims.  The State of California, the Attorney General, and any California natural person whose claims are represented by the State and who did not timely file an opt-out, will release all claims that could have been asserted against eBay in connection with the facts and events alleged in the Third Amended Complaint.  Id. at § VIII; Mot. at 6.

To determine whether the settlement is fair, adequate, and reasonable, the court must balance a series of factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."  Hanlon, 150 F.3d at 1026.  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  Id.  Each of these factors will be addressed.

### i. Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

To assess strength of the case, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." Officers for Justice, 688 F.2d at 625 (internal quotations omitted). There is no "particular formula by which that outcome must be tested," (Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)), and the district court is not required to render specific findings on the strength of all claims. Lane v. Facebook, Inc., 696 F.3d 811, 823 (9th Cir. 2012). Instead, the court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." Garner v. State Farm Mut. Auto. Ins. Co., No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010).

The State argues that in comparison to the expense and uncertainty of continued litigation, this settlement provides definite, rapid recovery for affected individuals. Mot. at 9. It further argues that while it believes it has strong liability claims against eBay, all litigation involves significant risk. Id.

The court agrees that a definite and rapid recovery for the affected individuals is significant. Given the early stage of litigation, absent a settlement agreement the State would have had to face continued years of litigation including conducting further discovery, motions for summary judgment, and trial, thus delaying any recovery for the affected individuals. Since a negotiated resolution provides for a certain recovery in the face of uncertainty in litigation, this factor weighs in favor of settlement. See Curtis-Bauer v. Morgan Stanley & Co., Inc., No. 06-C-3903 THE, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

### ii. The Amount Offered in Settlement

This settlement includes a monetary component requiring eBay to create a settlement fund of $3.75 million, of which $2.375 million will be allocated directly to the affected individuals. The State argues that the $2.375 million restitution fund provides ample, definite recovery for

individuals affected by the agreement between eBay and Intuit. Mot. at 9. It further argues that in the absence of a class action, this settlement represents the only practical means for eBay employees to recover on an individual basis, especially eBay employees whose private rights of action may already be time-barred due to the four-year statute of limitations in antitrust matters. Id. The settlement also provides for injunctive relief and *cy pres* distribution.

The court agrees that a $2.375 million restitution fund for affected individuals is significant given that some employees' claims would be time-barred. See 15 U.S.C. § 15b (providing a four-year statute of limitations). Moreover, the individuals in Claimant Pool One, who were most affected by eBay's practice, will each receive a $10,000 recovery, and those in Claimant Pool Two will each receive a $1,500 recovery. Through this settlement, affected individuals are able to receive more than they otherwise would by pursuing this action on an individual basis. Moreover, the *cy pres* distribution is notable since it will further the objectives underlying the relevant antitrust statutes and the interests of the silent class members.

The injunctive relief, however, is less impressive. As discussed at the hearing, the response for a violation of the injunction would result in the State bringing eBay back to court, and seek additional sanctions or monetary penalties if necessary. Tr. at 5-6. While the court notes the importance of obtaining injunctive relief, there does not appear to be a serious penalty involved with the relief so as to deter eBay from violating the injunction. For this reason, the injunctive relief component of the settlement is not of significant value.

Nonetheless, given the monetary recovery obtained, this factor weighs in favor of settlement.

      **iii.**    **The Extent of Discovery Completed and the Stage of the Proceedings**

The State argues that reaching a settlement relatively early in the litigation obviates the need for continued fact and expert discovery that is expensive and time consuming. Mot. at 9. The State further argues that the discovery it obtained was gathered from investigation conducted prior to filing this action and collected from the U.S. Department of Justice; through these efforts, the State reviewed thousands of pages of documents. Id. The State contends that it is sufficiently

8

informed of the nature of the claims and the defenses to this action to properly evaluate the decision to enter into a settlement. Id.

Given the amount of information available to the State through similar actions involving the U.S. Department of Justice, the court agrees that the State had sufficient information to properly evaluate its claims and the defenses to this action. The extent of the knowledge obtained by the State demonstrates that it "had a good grasp on the merits of [its] case before settlement talks began." Rodriguez, 563 F.3d at 967. Thus, this factor weighs in favor of settlement.

### iv. The Experience and Views of Counsel, and the Presence of a Governmental Participant

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." Id. Consequently, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" In re Omnivision Techns., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009) (quoting Boyd v. Bechtel Corp., 485 F. Supp. 610, 622 (N.D. Cal. 1979)).

The State argues that the settlement was reached through arms-length negotiation between experienced counsel who have considerable experience in antitrust and complex class action litigation. Mot. at 9. It argues that settlement negotiations involved numerous meetings, telephone conferences that included two mediated by the court's ADR program, and exchanges of written communications. Id. at 10. Moreover, the State argues that a settlement negotiated by government attorneys committed to protecting the public interest is entitled to greater weight. Id.

It is undisputed that counsel on both sides have considerable experience in antitrust and class action cases, and it is significant that counsel engaged in two telephone conferences mediated by the court's ADR program. Additionally, that government lawyers negotiated the settlement gives this factor considerable weight, as the State is charged with the trust of protecting the state and its citizens. See In re Lorazepam & Clorazepate Antitrust Litig., 205 F.R.D. 369, 380 (D.D.C. 2002) ("Court may place greater weight . . . in addressing a settlement negotiated by government attorneys committed to protecting the public interest); In re Toys R Us Antitrust

9
Case No.: 5:12-cv-05874-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT

1   Litig., 191 F.R.D. 347, 351 (E.D.N.Y. 2000) ("the participation of the State Attorneys General

2   furnishes extra assurance that consumers' interests are protected"). As such, this factor weighs in

3   favor of settlement.

####    v.     The Reaction of Class Members

A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval. See Hanlon, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); see also Nat'l Rural Telecomms. Coop., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

Here, in order to obtain monetary recovery, the affected individuals were required to submit a claim form. The response period lasted from November 24, 2014 to February 25, 2015. Suppl. Decl. of Kenneth Jue, Dkt. No. 84-1 at ¶ 5. The Claims Administrator received 4,880 valid claims, as follows: (1) Claimant Pool One: 15 claims received, to be paid at $10,000 each for a total disbursement of $150,000; (2) Claimant Pool Two: 343 claims received, to be paid at $1,500 each for a total disbursement of $514,500; and (3) Claimant Pool Three: 4,522 claims received, to be paid at $150 each for a total disbursement of $678,300. Id. at ¶ 6. Of the $2.375 million available as restitution for affected individuals, a total of $1,342,800, or 56.5%, will be distributed to the claimants. While $1,032,200 will remain in the settlement fund, $898,695 will be allocated for *cy pres* purposes and the remainder will be used to cover administration costs. Decl. of Paul A. Moore ("Moore Decl."), Dkt. No. 84-3 at ¶ 4. Given that notices were mailed to 31,547 affected individuals, and 4,880 valid claims were received, this constitutes a response rate of 15.47%. Moreover, the Claims Administrator received two timely objections, and 23 timely requests for exclusion. Jue Decl. at ¶¶ 26-27.

While the number of valid claims received is lower than the estimated figures presented at preliminary approval (see Dkt. No. 62 at 7), it is significant that affected individuals who

10

Case No.: 5:12-cv-05874-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT

1    submitted a valid claim form will be receiving the maximum amount allocated for their respective

2    claim pool.  It is likewise notable that just under one million dollars will be distributed to several

3    *cy pres* organizations.  The reaction of class members was generally positive, therefore, this factor

4    weighs in favor of settlement.

5        In sum, the court finds the settlement agreement to be fair, reasonable, and adequate.

6    Thus, final approval of the settlement is granted.

### IV.   CY PRES DISTRIBUTION

"In the context of class action settlements, a court may employ the *cy pres* doctrine to put the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." Nachshin v. AOL, LLC, 663 F.3d 1034, 1038 (9th Cir. 2011) (internal quotations omitted).  For a *cy pres* beneficiary to be appropriate, the selection of the beneficiary should be "tethered to the nature of the lawsuit and the interests of the silent class members." Id. at 1039.  According to the guiding standards set forth by the Ninth Circuit, a *cy pres* distribution must: (1) address the objectives of the underlying statutes, (2) target the plaintiff class, and (3) provide reasonable certainty that any member will be benefitted.  Id. at 1040.

Here, an amount of $898,695 will be available for *cy pres* distribution.  Moore Decl. at ¶ 4. The State engaged the services of *cy pres* fund administrator Harry M. Snyder ("Cy Pres Administrator"), and became involved in an extensive process to select the recipients.  The Cy Pres Administrator developed a *cy pres* distribution plan in conjunction with the State's attorneys whereby the goal would be to bridge the digital divide among traditionally underserved youth and adults in California by preparing them to enter an increasingly technologically driven workforce. Decl. of Harry M. Snyder ("Snyder Decl."), Dkt. No. 84-2 at ¶ 3.

By June 10, 2015, the Cy Pres Administrator received 23 applications from organizations seeking to become a *cy pres* recipient.  Id. at ¶ 4.  For each application received, the Cy Pres Administrator reviewed the applicant's proposal, financial information for at least two years, and supplemental information about the organization and project for which it was seeking funding.  Id. The Cy Pres Administrator also conducted a site visit for each applicant and/or interview of the

key person responsible for the proposed project, and consulted with program officers at other non-profit grant making and support organizations to inquire about the applicant's reputation in the non-profit community. Id. Ultimately, the Cy Pres Administrator and the State selected six organizations:

1. California Teaching Fellows Foundation: The recommended award is $50,000, to support technology-based training to underserved Central Valley students;

2. DIY Girls: The recommended award is $148,695, to support a program that provides field trips to technology industries, and day and residential summer programs providing underserved girls in the 6th through 8th grades in Los Angeles with technological and employment-related skills;

3. Filmmakers Collaborative SF: The recommended award is $250,000, to develop and implement an education and information campaign utilizing video, web and print materials regarding antitrust protections, with the aim of reaching and educating those seeking and offering employment in the technology industry;

4. Hidden Genius Project: The recommended award is $150,000, to support programs geared toward black males in middle and high school from underserved communities throughout Oakland, and surrounding areas in the East San Francisco Bay Area;

5. St. Anthony Foundation: The recommended award is $150,000, to provide technology and employment skills training for 200 indigent drug addicts and alcoholics in recovery; and

6. Turn2U Inc., DBA The Last Mile: The recommended award is $150,000, to expand in-prison computer programming training into an institution not currently served, and improve existing programs.

Id. at ¶ 6.

The State contends that improving diversity in California's high technology industry, improving workplace skills and enhancing the employability of underserved and underrepresented Californians has the strongest nexus to the underlying lawsuit. Moore Decl. at ¶ 8. The State determined that Californians and the California economy will benefit from the *cy pres* distribution

1   plan by having a better prepared future workforce, an increased likelihood of employment
2   opportunities for underrepresented youth and adults, and access to public education about
3   Californian's rights to employment protected by federal and state antitrust laws. Id. at ¶ 10. It
4   argues that employing a neutral and experienced Cy Pres Administrator ensured that there would
5   be an arms-length distance from the parties to the litigation, and would therefore assure
6   professionalism and fairness in the selection process. Id. at ¶ 11.

The comprehensive process in which the State engaged to select the *cy pres* recipients is thoughtful and admirable. Indeed, the use of a neutral Cy Pres Administrator to guide the process provides objectivity and fairness to the selection of the *cy pres* recipients. Moreover, each of the identified organizations has a nexus to the underlying lawsuit in that they involve employment-related skills and training, and are all located in California. As such, the court approves the six *cy pres* recipients selected by the State and the Cy Pres Administrator.

### V.   OBJECTIONS

The Claims Administrator reports having received two timely objections. Jue Decl. at ¶ 26. The first objector is Mr. Richard Scott Coonradt, who objects to the settlement because he believes this case should be expanded to cover employees at PayPal, an eBay subsidiary. Exh. E, Dkt. No. 71. In response, the State argues that this objection should be disregarded because it is a request to expand the allegations pleaded in the complaint rather than objecting to the settlement itself. Dkt. No. 75 at 1. Since the State is, at this stage, unable to amend the complaint, it complied with Mr. Coonradt's alternative request to be excluded from the settlement. Id.

Mr. Coonradt has not filed any documents with the court, thus it appears that his objection no longer stands. For this reason, this objection is overruled.

The second objector is Mr. Youchan Lee, who is represented by counsel. Mr. Lee is a former Intuit software engineer who has submitted a claim to this action. Dkt. No. 69 at 1. He objects to the settlement because the proposed payment to the affected individuals is too low given that it is only a fraction of what similarly aggrieved tech professionals receive in similar cases, it is below the State's expert's valuation of $57 million in damages before treble damages, the State

has a strong case, and the proposed settlement does not include a financial contribution from the "co-conspirator" Intuit. Dkt. No. 74 at 1-2. Objector Lee further argues that settling the case through phone calls and emails, instead of mediation with an experienced neutral, and limited discovery provided only by the U.S. Department of Justice from other similar actions likely contributed to the low settlement amount. Id. at 3.

In response, the State first argues that Intuit is not a necessary party to this matter, thus it was not required to include Intuit in the settlement. Dkt. No. 75 at 2. Second, it argues that the monetary recovery obtained for affected individuals is significant given that the settlement also includes injunctive relief, and separate sums for civil penalties, deadweight loss, and attorneys' fees. Id. at 3. It contends that this action cannot be compared with other class actions involving multiple defendants where the alleged conspiratorial activities were greater in scope, and where settlement was reached at a later stage of litigation. Id. As to the State's expert's valuation, the State argues that the expert report only measures economic damages, but does not account for the risks inherent in litigation. Id. at 3-4. Third, the State argues that settlement resulted from arms-length negotiations whereby the parties participated in two mediation conferences with the director of the court's ADR program. Id. at 4. Fourth, it argues that sufficient discovery was conducted prior to filing this case, and the State had access to investigative materials developed by the U.S. Department of Justice. Id. at 5.

While Mr. Lee raises some meritorious points, they are not sufficient to prevent final approval. At the hearing, Mr. Lee contended that the settlement amount was too low given the State's expert's valuation of the case. Tr. at 19-20. However, as the court noted, that assumes a victory at trial. Id. at 20. The court agrees with the State that the expert report does not take into account the risks inherent in litigation, and while Mr. Lee believes the State can prevail at trial, this result is uncertain. Mr. Lee further reiterated the absence of Intuit as a party, particularly since the affected individuals include Intuit employees. Id. at 21. The court agrees with the State, however, that Intuit is not a required party. Lastly, as to Mr. Lee's suggestion that there was no real mediation because the negotiations occurred over the phone and by email, the court stated that

the use of the court's mediator to at least facilitate a discussion is sufficient to note that negotiations occurred at arms-length, and to dismiss any appearance of collusion. Id. at 24. Given that Mr. Lee's arguments are unpersuasive, his objection to this settlement is overruled.

## VI. CONCLUSION

Based on the foregoing, the court finds that the terms of the settlement are fair, adequate, and reasonable; that it satisfies Federal Rule of Civil Procedure 23(e) and the fairness and adequacy factors; and that it should be approved and implemented. The Motion for Final Approval of Settlement is therefore GRANTED.

The hearing scheduled for September 10, 2015, is VACATED. Plaintiffs shall file a proposed judgment on or before **September 11, 2015**, that is consistent with this order and the settlement agreement (see Settlement Agreement § III(C)).

**IT IS SO ORDERED.**

Dated: September 3, 2015



EDWARD J. DAVILA
United States District Judge